IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
KATHLEEN M. SARANEY, et al.,      : CASE NO.  1:04 CV 02026
                                                            :
                                         Plaintiffs    : MEMORANDUM AND ORDER
                                                            : GRANTING DEFENDANT'S MOTION
                          -vs-                           : FOR SUMMARY JUDGMENT AND
                                                            : DENYING PLAINTIFFS' MOTION TO
                                                            : VACATE DEFENDANT'S MOTION FOR
TAP PHARMACEUTICAL PRODUCTS, : SUMMARY JUDGMENT.
INC.,                                                    :
                                                            :
                                      Defendant.   :
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Plaintiffs Kathleen M. Saraney and her husband, Johnnie Saraney (collectively "plaintiffs" or "the Saraneys") brought this products liability action in state court against defendant TAP Pharmaceutical Products, Inc. (hereinafter "TAP") and unnamed John and Jane Does for the marketing and administration of the drug Lupron Depot. (Docket No. 1, State Complaint).[1]  The Saraneys maintain the injections of Lupron Ms. Saraney received in 1998 resulted in the loss of bone density to such a degree that by November 2003 she was diagnosed with a condition known as Osteopenia, a precursor to Osteoporosis.  (Complaint, ¶ 14).  In their Complaint, which TAP removed pursuant to

---

[1]The Court hereby dismisses the unnamed Jane and John Does. The Saraneys' failure to amend their complaint to name the still unnamed parties causes the complaint to fall outside the applicable limitations period with regard to those specific defendants.  The Saraneys have satisfied neither the notice nor relation back requirements of Fed. R. Civ. P. 15(c)(3), which establishes ground for this Court to dismiss the suit against those unnamed parties. The Jane and John Does 1-10 have received neither actual nor constructive notice as deemed necessary under Fed R. Civ. P. 15(c)(3) and 4(m).

this Court's diversity jurisdiction, the Saraneys bring six claims: (1) design, manufacturing and promotion of a defective product; (2) breach of warranties of fitness and merchantability; (3) failure to warn; (4) failure to conform the product to its representations; (5) negligence; and, (6) loss of consortium.

After proceeding past the due dates for fact and expert discovery, pursuant to the Case Management Conference schedule, TAP filed its motion for Summary Judgment on 29 March 2006, to which the Saraneys did not reply. (Docket No. 24). At the time of the defendant's summary judgment filing the Saraneys had not identified an expert witness to testify on their behalf and had not submitted a written expert report in conformance with this Court's schedule and the dictates of Fed. R. Civ. P. 26(a)(2)(A) & (B). (Docket No. 14).

On 25 May 2006 the Saraneys' attorney, Charles Laurie, Jr. filed a Motion to Vacate Defendant's Motion for Summary Judgment. (Docket No. 27). Attached to this motion was an unsigned, undated affidavit from Mr. Laurie asserting lack of notice of TAP's motion for summary judgment. On 5 June 2006 TAP filed its brief in opposition to the plaintiffs' motion to vacate. (Docket No. 29).

For the reasons set forth below, the Court will grant the defendant's request for summary judgment and dismiss the plaintiffs' claims as a matter of law pursuant to Fed. R. Civ. P. 56. In addition, the Court will deny the Saraneys' motion to vacate TAP's motion for summary judgment.

2

**I.     FACTUAL BACKGROUND**

Pursuant to the alleged facts, as recited in the Saraneys' complaint and deposition, Ms. Saraney was diagnosed with endometriosis in 1998 by Dr. David Vexler an Obstetrician and Bynecologist at Beachwood OB/GYN located in Beachwood, Ohio. (Compl. ¶9).  Dr. Vexler prescribed Lupron injection treatments for Ms. Saraney, once per month.  Ms. Saraney received a treatment of Lupron injections over a three month period, from 13 May 1998 until 8 July 1998.  (Compl. ¶11).  Dr. Vexler provided Ms. Saraney with a prescription for a 3.75 mg dosage of Lupron, which she purchased from her pharmacy and brought to Dr. Vexler's office where he administered the injections. (Deposition of Kathleen Saraney, hereinafter "Pl's Depo," pp. 18-21).  According to Ms. Saraney's deposition, Dr. Vexler discussed the potential risks and complications associated with Lupron.  Ms. Saraney acknowledges receiving the warning information included with each dosage of Lupron and giving those package inserts to Dr. Vexler. (Pl's Depo, pp 20-22).

Following this treatment Ms. Saraney alleged she experienced an irregular menstrual cycle and pelvic pain.  (Compl. ¶12).  Dr. Vexler referred Ms. Saraney to her primary care physician for her complaints of bone and back pain where she was, in turn, referred to Dr. Alla Model, a bone specialist.  (Pl's Depo, pp 27-28, 30).  Ms. Saraney received a bone density scan in November 2003, which indicated loss of bone density and led to a diagnosis of Osteoporosis. (Compl. ¶14).

Both parties acknowledge that TAP manufactures Lupron as an FDA-approved prescription drug used for treatment of, among other things, endometriosis.  (Compl. ¶¶1-8; Def's Brief, p. 2).  TAP provides further explanation of the administration of

3

Lupron, indicating the drug is accompanied by an FDA-approved package insert which identifies counter-indications and possible risks. TAP specifically notes the insert warns patients that Lupron's "induced hypoestrogenic state also results in a small loss in bone density over the course of treatment, some of which may not be reversible." (Declaration of Dean Sundberg, Ex. A at KS 04, 07). TAP indicates the insert warnings are intended for the use and reference of the patient's physician, that Lupron must be administered under the supervision of a physician, and instructs the physician on administering the drug. (Sundberg Decl., Ex. A. at KS 08-09).

## II.     LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting

4

Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed.R.Civ.P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as

5

to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

**B.  The Saraneys' Motion to Vacate TAP's Summary Judgment Motion.**

As an initial matter, the Court will address the Saraneys' "Motion to Vacate Defendant's Motion for Summary Judgment."  (Docket No. 27).  As a procedural matter, the Court established a pre-trial schedule of due dates for this matter on 7 June 2005 at the Case Management Conference ("CMC").  (Docket No. 14).  The Saraneys' counsel, Charles Laurie, was present at that meeting and signed the scheduling order produced at the CMC in which the Court established deadlines, including the 29 March 2006 deadline for dispositive motions.  TAP filed its Motion for Summary Judgment on 29 March 2006 on the Court's Electronic Case Filing system ("ECF").

Through their attorney, Charles Laurie, the Saraneys, maintain they did not receive notice of TAP's summary judgment filing.  (Docket No. 27).  In an unsigned and undated affidavit accompanying the 25 May 2006 Motion to Vacate, Mr. Laurie alleges he did not receive notification of the Motion for Summary Judgment until 16 May 2006[2] when he received TAP's Notice of an unopposed Summary Judgment Motion, which the

---

[2]Mr. Laurie's affidavit marks the date as 16 May 2005, which the Court has corrected in its recitation of the facts.  Further, to the extent that Mr. Laurie's Affidavit is unsigned and undated, it fails to comport with 28 U.S.C. § 1746 and cannot be construed as a sworn declaration certified under penalty of perjury.

6

defendant filed on 8 May 2006.  (Docket No. 27, Exh. A, Charles Laurie Affidavit, ¶ 3). The affidavit relates that he "and his employees further reviewed the file and computer records in his office to determine whether or not a motion had been filed and previously overlooked" and "that this effort to locate any filings turned up no such filing." (Aff. ¶¶6, 7).

TAP opposes the Saraneys' Motion to Vacate and submits an affidavit from its lead counsel, John Q. Lewis.  (Docket No. 29).  Mr. Lewis represents that on 29 March 2006 he received an e-mail notification that Mr. Laurie and the Saraneys' other named attorney in this matter, Robert Dintaman, received copies of the defendant's Summary Judgment Motion.  (Lewis Affidavit ¶2).  Mr. Lewis further relates that he received a phone call in late April from Dan Ryan, an attorney representing the Saraneys who had yet to enter an appearance on the docket.  (Lewis Aff. ¶3).  The evidence suggests the purpose of the call by Mr. Ryan was to make a settlement demand in the matter.  Mr. Lewis indicated that Mr. Ryan asked him to respond quickly to allow the Saraneys' attorneys enough time to respond to the pending motion for summary judgment, if necessary.  Mr. Lewis relates the defendant rejected the demand.  (Lewis Aff. ¶ 3).

Upon review of the record, the Court finds that Mr. Laurie has not demonstrated that all of the Saraneys' counsel failed to receive notification of the defendant's summary judgment motion.  Nor has Mr. Laurie proved the extraordinary conditions necessary to warrant vacating the defendant's summary judgment motion.  As an initial matter, all parties were on notice of the dispositive motions deadline of 29 March 2006.  Of this, Mr. Laurie was aware, as he was present when the schedule was created in this matter.  Secondly, Mr. Laurie is registered with the Court's ECF system.  It is the Court's

7

assumption that Mr. Laurie maintains his registry with up-to-date contact information, as he is required to do. L.R. 5.1(c). Third, the Saraneys were also represented by Robert E. Dintaman, Jr. and the uncontested evidence indicates he did receive notice of TAP's 29 March 2006 motion for summary judgment.

Accordingly, the Court will deny the Saraneys' Motion to Vacate the Defendant's Motion for Summary Judgment. The Court will now proceed to a review of that unopposed dispositive motion.

### C. The Saraneys' Failure to Warn Claim (Count III).

Product liability claims brought under Ohio law, as in this instance, are governed by the Ohio Products Liability Act ("OPLA") §§ 2307.71 -.80. Importantly, the OPLA, along with Ohio court decisions, establish that provision of an adequate warning concerning unavoidably unsafe aspects of an "ethical drug," such as Lupron, bars claims of defective design and defective formulation. See Kennedy v. Merck & Co., Inc., 2003 WL 21658613, at 3* (Ohio Ct. App. 3 July 2003). Section 2307.75(D) provides the following:

> An ethical drug or ethical medical device is not defective in design or formulation because some aspect of it is unavoidably unsafe, if the manufacturer of the ethical drug or ethical medical device provides adequate warning and instruction under § 2307.76 of the Revised Code concerning that unavoidably unsafe aspect.

The OPLA establishes a threshold for an adequate warning, noting that a warning is considered inadequate if, when the product left the control of its manufacturer, both of the following applied:

8

> (a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages; (and)
>
> (b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the seriousness of the harm.

O.R.C. § 2307.76(A)(1). See also Seley v. G.D. Searle & Co., 423 N. E. 2d 831, 838 (Ohio 1981) (holding that under the OPLA the plaintiff must first prove the inadequacy of the warning and must second, establish the proximate cause between the product and the fact of the plaintiffs injury).

Under Ohio law a manufacturer's duty to warn a consumer of an ethical drug like Lupron, that requires a prescription, is discharged where the physician receives an adequate warning. O.R.C. § 2307.76(C); Dunlap v. Medtronic, Inc., 47 F.Supp. 2d 888 (N.D. Ohio 1999) (applying the 'learned intermediary doctrine' where the physician prescribed the drug in the course of the doctor-patient relationship); Vaccariello v. Smith & Nephew Richards, Inc., 763 N.E. 2d 160 (Ohio 2002) (holding that physicians, as learned intermediaries between the product manufacturer and the patient, have a duty to convey manufacturer product warnings to the patient for whom the product is prescribed). In this Circuit, the learned intermediary doctrine applies even where the physician fails to convey the information to the patient. See Schindler v. Lederle, 725 F.2d 1036, 1039-40 (6th Cir. 1983) (finding the plaintiffs' proof demonstrated, the warnings given by the manufacturer in its package inserts were adequate to put a reasonably competent pediatrician on notice).

9

Generally, whether a particular warning is "adequate" is a question of fact to be resolved by a jury. However, "where the warning is accurate, clear, and unambiguous," it is a question of law. Thom v. Bristol-Myers Squibb Co., 353 F.3d 848, 853 (10th Cir. 2003). To be considered adequate, a warning concerning a prescription drug generally must "contain a full and complete disclosure of the potential adverse reactions to the drug." Pittman v. Upjohn Co., 890 S.W.2d 425, 429 (Tenn.1994). Put differently, "a warning is 'adequate' ⋯ where, under all the circumstances, it reasonably discloses to the medical profession all risks inherent in the use of the drug which the manufacturer knew or should have known to exist." Seley Seley v. G. D. Searle & Co., 67 Ohio St.2d 192, 198, 423 N.E.2d 831 (Ohio 1981). Merely mentioning a possible injury or adverse effect is not necessarily adequate. Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 267 (5th Cir.2002). An adequate warning of an unapparent risk is one that is reasonable under the circumstances. Brochu v. Ortho Pharm. Corp., 642 F.2d 652, 657 (1st Cir.1981). The following considerations, while not exclusive, are relevant in determining whether a warning is adequate as a matter of law:

> 1. the warning must adequately indicate the scope of the danger; 2. the warning must reasonably communicate the extent or seriousness of the harm that could result from misuse of the drug; 3. the physical aspects of the warning must be adequate to alert a reasonably prudent person to the danger; 4. a simple directive warning may be inadequate when it fails to indicate the consequences that might result from failure to follow it and, ⋯ 5. the means to convey the warning must be adequate.

Pittman v. Upjohn Co., 890 S.W.2d 425, 429 (Tenn.1994) (quoting Serna v. Roche Labs., 101 N.M. 522, 684 P.2d 1187, 1189 (1984)); In re Meridia Products Liability Litigation, 328 F.Supp.2d 791 (N.D.Ohio 2004).

In this instance, Ms. Saraney submits through her deposition testimony that she received the written warnings contained in a package insert included with the Lupron she purchased at the pharmacy pursuant to Dr. Vexler's prescription. (Pl's Depo., p. 22). Her testimony also indicates that she brought the Lupron along with the package insert warnings to Dr. Vexler's office when he administered each of the Lupron injections. (Pl's Depo., pp. 21, 23-24). As noted previously, the package insert specifically warned of loss in bone density as a result of taking the Lupron. These warnings appeared in sections entitled "PRECAUTIONS" and "ADVERSE REACTIONS" as part of the package insert. (Sunberg Declaration, ¶¶5, 6). The "ADVERSE REACTIONS" section of the package insert specifically contained a subsection entitled "Changes in Bone Density" which addresses the risk of loss of bone density for patients prescribed Lupron for treatment of endometriosis. Id. (Docket No. 24, KS 0007).

The Lupron insert is intended for physicians which are, due to their training, able to make better medical judgments than the consumer; warnings that might not be adequate to average consumers may very well be adequate to physicians. Regarding the first factor delineated above, the insert does detail the degree and scope of the danger. The insert relays to physicians the extent of the harm with regard to the loss in bone density. (KS 00004). The same analysis applies to the second and fourth factors. Physicians understand the effects of loss in bone density and the seriousness of the harm that can result from continuing Lupron treatment with patients who may or may not have risk factors. Considering the third factor, the warning is adequate. The insert addresses bone density issues in bold capital letters under the heading, "PRECAUTIONS" and "ADVERSE REACTIONS." The physical aspects of the warning

are therefore sufficient. Finally, in considering the fifth factor the Court finds the warning is adequate. TAP conveyed the warning on a product insert that may reasonably be assumed is read by physicians. See, e.g., Restatement (Second) Of Torts, § 402A cmt. j ("Where a warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.").

TAP has establish that their Lupron prescriptions came with a package insert intended for the physician's use and reference.  The insert further establishes that the prescribing physician is responsible for providing the patient with the appropriate warnings about product use.  It is undisputed that this insert repeatedly warns of the risk of the loss of bone density with the use of Lupron.  Accordingly, Ms. Saraneys' claim that TAP failed to provide an adequate warning for its product (Count III) is hereby dismissed as a matter of law pursuant to O.R.C. § 2307.76.[3]

### D.  The Saraneys' Manufacturing defect claim (Count I).

In leveling the charge that the manufacturing of Lupron was defective, the Saraneys aver the drug "deviated in a material way from the design specfications, formula and/or performance standards as a female hormone therapy. (Complaint ¶¶ 17-19).  The defendant maintains the Saraneys have not identified the alleged defect and have provided no evidence to show one exists.  (Def's Brief, p. 9).

---

[3] The court further notes the duty of the plaintiffs in this matter to establish the inadequacy of any warning through expert medical testimony.  See Graham v. Am. Cyanimid Co., 350 F.3d 496, 514 (6th Cir. 2003).  Yet, the Saraneys have presented no expert witness or other evidence on any issue before the Court in this matter.  The lack of an expert witness proves fatal to the Saraneys' product defect claims and further compels the Court to find their claims insufficient as a matter of law.

In order for the Saraneys to recover on a products liability claim under Ohio Revised Code § 2307.74, they must establish by a preponderance of the evidence that: "(1) [t]here was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiffs' injuries or loss." State Auto. Mut. Ins. Co. v. Chrysler Corp., 36 Ohio St.2d 151, 304 N.E.2d 891, paragraph two of the syllabus (1973); see also State Farm Fire & Cas. Co. v. Chrysler Corp., 37 Ohio St.3d 1, 523 N.E.2d 489 (1988).

In a matter such as this, where the alleged defective product is a prescription drug, Ohio courts are clear that evidence of a manufacturing defect is beyond the kin of lay witnesses and must be established by expert testimony. See Kerpelis v. Pfizer, Inc., 2004 WL 1326771, at *4-5 (Ohio Ct. App. 7 June 2004) (finding the plaintiff would have to introduce expert testimony to establish whether a prescription drug is defective and whether it is the proximate cause of an injury); Stacey v. Carnegie-Illinois Steel Corp., 101 N.E.2d 897 (Ohio 1951) (expert testimony is required to answer an issue in a case involving a question of scientific inquiry which is not within the knowledge of lay witnesses or members of the jury).

The Saraneys are unable to satisfy the first requirement.  Namely, they have not provided evidence, or any expert testimony, as to the nature of the alleged defect.  As such, because the Saraneys have failed to offer any expert testimony, the Court grants TAP's motion for summary judgment on this claim.

**E. The Saraneys' claim for breach of warranties (Count II).**

The Saraneys maintain TAP breached express and implied warranties that "Lupron was of good, safe and merchantable quality." (Complaint ¶ ¶20, 21). TAP contends that without the necessary expert testimony the Saraneys implied breach of warranty must fail. (Def's. Brief, p. 10).

As an initial matter, Ohio courts have interpreted the OPLA to have codified claims for breach of express warranty under O.R.C. § 2307.77 as a claim for failure to conform. See Cervelli v. Thompson/Center Arms, 183 F. Supp. 2d 1032, 1045 (S.D. Ohio 2002). Accordingly, the Saraneys' express warranty claim will be addressed in the following section under the plaintiffs' failure to conform claim.

The Saraneys proffer no proof to satisfy, as they must for a claim of implied warranty, whether there was a defect in the product, whether that defect existed at the time, and whether that defect proximately caused the injury. See State Auto. Mut. Ins. Co. v. Chrysler Corp., 36 Ohio St.2d 151, 304 N.E.2d 891, paragraph two of the syllabus (1973). As such, the Court will grant summary judgment on the Saraneys' breach of implied warranty claim. Patterson v. Central Mills, 112 F. Supp. 2d 681, 690 (N.D. Ohio 2000).

**F. The Saraneys' allegation that Lupron is defective because it failed to Conform to TAP's Representation (Count IV).**

The Saraneys maintain that TAP made representations in bringing Lupron to the market to "individuals such as Ms. Saraney" that the drug "was of good, safe and merchantable quality." (Complaint ¶¶ 20, 25). The Saraneys contend that TAP failed to conform the drug to those representations.

14

Under O.R.C. § 2307.77, which codifies the common law claim of breach of express warranty, a product is defective if it:

> did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product is may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

"Representation" is defined as an " express representation of a material fact concerning the character, quality, or safety of a product." O.R.C. § 2307.71(O) (emphasis added). See also White v Depuy, 129 Ohio App.3d at 484, 718 N.E.2d 450 (1998).

To recover under this section of the OPLA, the Saraneys must provide evidence that: (1) the manufacturer made representation as to a material fact concerning the character or quality of the product; (2) the product did not conform to that representation; (3) the Saraneys justifiably relied on that representation; and (4) the plaintiff's reliance on the representation was the direct and proximate cause of the plaintiffs' injuries. Cervelli, 183 F. Supp. 2d at 1045; Patterson v. Central Mills, 112 F.Supp. 2d at 691 (holding that a failure to conform claim requires a plaintiff to identify an express representation of a material fact).

The Saraneys' bare allegation, contained in their complaint, that TAP generally warranted Lupron of "good, safe and merchantable quality" is insufficient to prove the express representation necessary to meet the standards laid down in O.R.C. § 2307.77. Beyond the complaint, the Saraneys submit no evidence of an express representation. Further, Ms. Saraney testified that no express representations were made to her by TAP about Lupron. (Pl's. Depo., p. 46). Because the Saraneys provide no evidence of

an express representation, TAPS is entitled to summary judgment on the plaintiffs' failure to conform claim.

### G.  The Saraneys' Negligence Claim (Count V).

The Saraneys bring a negligence claim which specifically incorporates, as its cause the "acts and/or omissions of the Defendants, jointly and severally, as set forth above in paragraphs 1 trough 26 of her Complaint."  (Compl. ¶ 27).  TAP maintains the negligence claim is entirely preempted by the OPLA.  (Def's. Brief, pp. 12-14).

The Court finds Ms. Saraneys' negligence claim preempted by the OPLA.  See Tompkins v. American Brands, 219 F. 3d 566, 575 (6th Cir. 2000) (finding claim for negligence for the manner in which cigarettes were tested, researched, sold and promoted fell under the auspices of the OPLA); Delahunt v. Cytodyne Tech., 241 F. Supp. 2d 827, 843-44 (S.D. Ohio 2003) (finding the OPLA preempted the plaintiff's claim that the defendant was negligent for fraudulently marketing its product by misrepresenting its dangerousness).

In Ohio, during the period of Ms. Saraney's alleged injury, common law claims were preempted only to the extent that they are specifically covered by the OPLA.[4] However, the Saraneys' negligence claim is structured so as to include only the OPLA provisions, specifically incorporating their previous allegations of defective design,

---

[4] Although the General Assembly eliminated common law product liability causes of action effective 7 April 2005, a common law action for negligent design was still allowed at the time of the Saraneys' alleged injury between 1998 and 2003.  See Carrel v. Allied Products Corp. (1997), 78 Ohio St.3d 284, 1997-Ohio-12, 677 N.E.2d 795, paragraph one of the syllabus (allowing common law negligent design action), and R.C. 2307.71(B) (abrogating the result in Carrel as of 7 April 2005); Routzahn v. Garrison, 2006 WL 1984498 (Ohio App. Dist., 14 July 2006).

inadequate warning and failure to conform.  As such, their negligence claim may be construed as a claim for negligent design, already set forth by the Saraneys in their first cause of action and brought pursuant to Ohio Rev.Code section 2307.75.  In addition, their negligence claim may be construed as a claim for inadequate warning, already set forth by the Saraneys in their third cause of action, and asserted under Ohio Rev.Code section 2307.76.  Finally, their negligence claim may be construed as a claim for failure to conform, already alleged by the Saraneys in their second and fourth causes of action and covered by Ohio Rev. Code section 2307.77.  Accordingly, the OPLA displaces the Saraneys' negligence claim and it must be pled pursuant to the statute.[5]  The Court finds defendant TAPS is entitled to summary judgment on the plaintiffs' negligence claim.

### H.  Johnnie Saraney's Claim for Loss of Consortium (Count VI).

The Saraneys' complaint alleges Johnnie Saraney, the spouse of Kathleen Saraney, suffered the loss of "companionship, consortium and services" as a result of the claimed harm done by TAP to Ms. Saraney.  (Compl. ¶ 31).  TAP seeks summary judgment on this derivative claim to comport with the dismissal of the underlying, primary causes of action. (Def's. Brief p. 15).

The Court finds the Saraneys' claim for loss of consortium fails as a matter of law.  Ohio courts recognize a loss of consortium claim as a derivative claim dependent

---

[5] To the extent the Saraneys have produced no evidence of product defect or proximate cause in connection with their OPLA claims, their negligence claim, even standing alone, fails on the merits as the plaintiff must, but has not, shown that TAP breached any duty or that this breach of duty proximately resulted in the alleged injury.  See Wade v. Diamant Boart, Inc., 374 F. Supp. 2d 586, 590 (N.D. Ohio 2005).

17

upon the existence of a primary claim; the derivative claim may be maintained for only so long as the primary claim continues.  Keller v. Foster Wheel Energy Corp., 837 N.E.2d 859, 863-64 (Ohio App. Dist. 2005).  As it is axiomatic that a derivative claim cannot yield greater relief than that relief permitted under a primary claim, a derivative claim fails when the primary claim fails. Id.

In this instance, the dismissal as a matter of law of each of the Saraneys primary claims requires the Court to dismiss their loss of consortium claim as well.  Accordingly, the Court grants TAP's motion for summary judgment on the Saraney's loss of consortium claim.

### III.    CONCLUSION

For the reasons set forth above, the Court finds no genuine issues of material fact in dispute.  TAP is entitled to judgment as a matter of law on the Saraneys' statutory and common-law claims.  Accordingly, the Court grants the defendant's motion for summary judgment on the entirety of the Saraneys' claims.  In addition, the Court denies the Saraneys' motion to vacate TAP's motion for summary judgment.

IT IS SO ORDERED.

                                       /s/Lesley Wells  
                                       UNITED STATES DISTRICT JUDGE

Dated: 16 January 2007